IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,044

STATE OF KANSAS,
*Appellee*,

v.

KYREE MARSHON MCCLELLAND,
*Appellant*.

SYLLABUS BY THE COURT

1.

Felony murder is the killing of a human being committed in the commission of, attempt to commit, or flight from an inherently dangerous felony. In interpreting the felony-murder statute, this court has rejected a narrow reading of the statute requiring that the death occur during the commission of, attempt to commit, or flight from the felony. Instead, a less restrictive construction of the statute prevails in the caselaw, where the requirement is that the killing be some part of the underlying felony.

2.

In order to establish felony murder, the State must prove two causation elements. First, the death must lie within the res gestae of the underlying crime, which is defined in this context as acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence. Second, the felony and the homicide must have a direct causal connection, which exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.

1

3.

When applying the felony-murder rule, the felony and the victim's death do not need to occur simultaneously, nor does the felony need to occur before the death. Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and therefore subject to the felony-murder rule.

4.

A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. The reason for this is because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation. Accordingly, the State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges.

5.

Generally, if a jury instruction on the elements of a crime adds alternate statutory elements that were not contained within the language of the complaint or information charging the defendant with the crime, the instruction is overly broad and, thus, erroneous.

6.

When a defendant is sentenced to multiple convictions in Kansas, K.S.A. 2011 Supp. 21-6819(b)(2) requires that the district court establish a base sentence for the primary crime. The primary crime is the on-grid crime which has the highest severity level among all the on-grid crimes of which the defendant was convicted. K.S.A. 2011 Supp. 21-6819(b)(2). K.S.A. 2011 Supp. 21-6819(b)(4) provides that the total prison

2

sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint, or indictment cannot exceed twice the base sentence.

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed April 24, 2015. Affirmed in part, sentences vacated in part, and case remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Rachel Pickering*, of the same office, was on the brief for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: A jury found Kyree Marshon McClelland guilty of felony murder, three counts of attempted aggravated robbery, and one count of aggravated burglary. The district court sentenced McClelland to a hard 20 life sentence for the felony-murder conviction, imposed standard guidelines sentences for each of the remaining convictions, and ordered the sentences to run consecutively, resulting in a 153-month sentence consecutive to the life sentence.

On appeal, McClelland argues:  (1) the State presented insufficient evidence to convict him of felony murder because one of the three attempted aggravated robberies relied on by the State to support the felony-murder charge was complete by the time McClelland shot the victim and, thus, the victim's death did not result from all three underlying felonies; (2) the district court's jury instruction on felony murder was broader than the charged crime; and (3) the district court violated the "double-rule" of K.S.A. 2011 Supp. 21-6819(b)(4) when it imposed the 153-month prison sentence because the

sentence exceeded twice the base sentence McClelland received for the primary crime of attempted aggravated robbery.

We conclude that the State presented sufficient evidence showing that the victim's death resulted from any one of the three aggravated robberies McClelland attempted to commit. We also conclude that jury instruction on felony murder was not erroneous. Finally, as conceded by the State, we agree with McClelland that his 153-month prison sentence violates K.S.A. 2011 Supp. 21-6819(b)(4) because the sentence is more than double the amount of prison time McClelland received for his primary crime of attempted aggravated robbery. Accordingly, we vacate the 153-month sentence and remand for resentencing.

FACTS

During the evening of August 29, 2011, Use David Laeli invited his neighbors, Timothy Stone and Cecil Penry, into his home so Penry could try on a pair of shoes that he was interested in buying from Laeli. As Penry was trying on the shoes near the kitchen area of the house, Laeli noticed a man he had never seen before, later identified as McClelland, inside his dining room. McClelland asked Laeli whether he had any marijuana. Laeli told McClelland that he had none and that McClelland needed to leave the house. At that point, McClelland pulled a handgun from behind his back and pointed it at Laeli. He ordered Laeli to give him money and to get on the floor. Laeli kneeled down on the floor.

At this same time, McClelland noticed Penry and Stone standing near the kitchen area. He pointed his gun at them and demanded money. McClelland approached the men and attempted to strike Stone with his gun. At this point, Stone and Penry started

4

struggling with McClelland for control of the gun, and Laeli ran out of his home to a neighbor's house get help.

During the struggle to disarm McClelland, the gun fired, striking Stone in the chest. Laeli heard the gunshot as he was returning from the neighbor's house with two other men to assist Stone and Penry. When the men entered the home, they saw Penry struggling with McClelland. The men eventually subdued McClelland, and shortly thereafter, he was taken into custody by police. Stone later died as a result of the gunshot wound.

The State charged McClelland with one count of felony murder based on the underlying felony of attempted aggravated robbery, three counts of attempted aggravated robbery for each of the three victims (*i.e.*, Stone, Penry, and Laeli), and one count of aggravated burglary. Notably, in charging McClelland with felony murder, the State did not specify which attempted aggravated robbery it was relying on to serve as the underlying felony.

At trial, the State presented several witnesses, including Penry and Laeli. The defense presented no witnesses, and McClelland did not testify.

The district court instructed the jury on the elements of the felony murder charged in this case:

"The defendant is charged with the crime of murder in the first degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
1. That the defendant killed Timothy Stone;

5

2. *That such killing was done while attempting to commit aggravated robbery*; and

3. That this act occurred on or about the 29th day of August, 2011, in Shawnee County, Kansas.

"The elements of attempting to commit aggravated robbery are as follows:

1. That the defendant performed an overt act toward the commission of the crime of aggravated robbery;

2. That the defendant did so with the intent to commit the crime of aggravated robbery;

3. That the defendant failed to complete the commission of the crime of aggravated robbery; and

4. That this act occurred on or about the 29th day of August, 2011, in Shawnee County, Kansas.

. . . .

"The elements of the completed crime of aggravated robbery are as follows:

1. *That the defendant intentionally took property from the person of Timothy Stone, and/or Use David Laeli, Jr., and/or Cecil Penry, Jr.*;

2. That *the taking was by threat of bodily harm to Timothy Stone, and/or Use David Laeli, Jr., and/or Cecil Penry, Jr.*;

3. That the defendant was armed with a dangerous weapon; and

4. That this act occurred on or about the 29th day of August, 2011 in Shawnee County, Kansas." (Emphasis added.)

Ultimately, the jury found McClelland guilty of all the charged crimes. The district court ordered McClelland to serve a hard 20 life sentence for the felony-murder conviction and imposed a consecutive 153-month sentence for the remaining convictions. McClelland filed a timely notice of appeal.

SUFFICIENCY OF THE EVIDENCE

As noted above, the district court instructed the jury that if it found McClelland killed Stone while attempting to rob Stone, Penry, or Laeli, then McClelland was guilty

6

of felony murder. Accordingly, the jury was instructed on alternative means of committing the felony murder charged in this case. See *State v. Bailey*, 292 Kan. 449, 458, 255 P.3d 19 (2011) ("[D]ifferent underlying felonies supporting a charge of felony murder are alternative means rather than multiple acts.").

In *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994), *overruled on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014), this court, quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 (1988), stated:

> "'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.'"

Subsequently, in *State v. Wright*, 290 Kan. 194, 203-06, 224 P.3d 1159 (2010), *overruled on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014), this court held that appellate courts should apply a super-sufficiency of the evidence test in alternative means cases. Under this test, the State must present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. Therefore, when the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support each means, reversal is required. *Wright*, 290 Kan. at 202-03.

Based on this caselaw, McClelland argues that the State failed to present sufficient evidence to convict him of felony murder because the evidence failed to establish each means of committing the felony murder charged in the case—namely, that Stone's death resulted from the attempted robbery of Laeli (McClelland does not dispute that Stone's death resulted from the attempted robberies of Stone and Penry). McClelland notes that Stone was shot after Laeli had escaped from the house. Thus, McClelland contends that

7

his attempted robbery of Laeli was completed by the time he shot Stone, rendering Stone's death unconnected to the attempted robbery.

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 8, 245 P.3d 1030 (2011). Furthermore, this court has recognized that there is no distinction between direct and circumstantial evidence in terms of probative value. *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." *McCaslin*, 291 Kan. 697, Syl. ¶ 9.

*Analysis*

Felony murder is the killing of a human being committed "in the commission of, attempt to commit, or flight from an inherently dangerous felony." K.S.A. 2011 Supp. 21-5402(a)(2). Aggravated robbery is considered an inherently dangerous felony for purposes of applying the felony-murder rule. See K.S.A. 2011 Supp. 21-5402(c)(1)(D).

In interpreting the felony-murder statute, we have rejected a narrow reading of the statute requiring that the death occur *during* the commission of, attempt to commit, or flight from the felony. As noted in *State v. Griffin*, 279 Kan. 634, 641, 112 P.3d 862 (2005), "[a] less restrictive construction of the statute prevails in the caselaw, where the requirement is that the killing be some part of the [underlying] felony." For example, in

8

*Griffin*, during the burglary of an apartment, the defendant and an accomplice pushed over a stove, causing the gas supply pipe to break. The defendant and his accomplice heard the gas hissing from the broken pipe and fled from the apartment. Gas continued to escape into the apartment until an explosion occurred sometime between 2 1/2 and 2 3/4 hours later, killing two people. Reviewing this evidence, the *Griffin* court affirmed the defendant's felony-murder convictions, finding that the evidence was sufficient to show that the victims' deaths resulted from the defendant's commission of an inherently dangerous felony (*i.e.*, burglary).

Similarly, in *State v. Jacques*, 270 Kan. 173, 14 P.3d 409 (2000), the defendant hatched a plan with his cousin to purchase cocaine from an acquaintance. The defendant was to remain at a grocery store while the cousin completed the transaction at the acquaintance's house. The defendant grew bored waiting for his cousin, so he walked to the house where, after knocking on the door, the cousin came out of the house and the two of them got into an altercation, resulting in the defendant stabbing his cousin. The defendant then went into the house and purchased cocaine. The cousin later died as a result of his stab wound. The *Jacques* court reviewed the evidence and found that a reasonable factfinder could have concluded that the stabbing occurred within the res gestae of possessing cocaine because the cousin's attempt to purchase cocaine, the defendant's act of stabbing his cousin, and the defendant's subsequent purchase of cocaine were part of one continuous transaction. The court also noted that the defendant had the opportunity to take his cousin to the hospital but chose instead to enter the house and complete the purchase. Accordingly, this court affirmed the defendant's felony-murder conviction based on the underlying felony of possessing cocaine. 270 Kan. at 189-90.

The requirement that the killing be some part of the underlying felony is reflected in the test for determining application of the felony-murder rule. In *State v. Cameron*, 300 Kan. 384, 396-97, 329 P.3d 1158 (2014), we stated:

9

"In order to establish felony murder, the State must prove two causation elements. First, the death must lie within the res gestae of the underlying crime, which is defined in this context as acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence. Second, the felony and the homicide must have a direct causal connection, which exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death."

Furthermore, in *Jacques*, we stated:

"When applying the felony-murder rule . . . the felony and the victim's death do not need to occur simultaneously, nor does the felony need to occur before the death. Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and therefore subject to the felony-murder rule." 270 Kan. at 189-90.

Regarding the causal connection between an attempted aggravated robbery and a subsequent death, this court in *State v. Branch and Bussey*, 223 Kan. 381, 383, 573 P.2d 1041 (1978), stated:

"A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon . . . and forces his way into an occupied dwelling. The impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct. Under such circumstances every robber who expects human opposition to his quest to steal, as he must when he commits a statutory robbery, is a potential assassin because he knows he may be forced to use his weapon either to carry out his criminal act or to escape without being pursued and captured by his victim."

We rejected an argument similar to McClelland's in *State v. Phillips*, 295 Kan. 929, 287 P.3d 245 (2012). In that case, the defendant entered a home armed with a gun

and robbed two individuals of money in the front part of the residence. After taking their money, the defendant then moved to the back of the residence where he saw a female acquaintance involved in an altercation with the victim. The victim eventually rushed towards the defendant, and the defendant shot at him while walking backwards towards the front door. The defendant was subsequently convicted of felony murder based on the theory that the killing occurred during the commission of the aggravated robberies of the two individuals.

On appeal, the defendant argued that the State presented insufficient evidence to show that he killed the victim during the commission of the aggravated robberies because the robberies were complete by the time the shooting occurred. This court rejected the defendant's argument, stating:

> "The res gestae element is satisfied because [the victim's] murder occurred immediately after the happening of the principal occurrence—aggravated robbery—and thus became so closely connected with the principal occurrence as to form a part of the occurrence. A direct causal connection is also present. The time element is met because there was evidence the events happened quickly and that [the defendant] moved from his aggravated robbery of [one individual] immediately to the bedroom where [the female acquaintance] struggled with [the victim]. The distance factor is satisfied because the aggravated robberies of [the individuals] occurred in the same house where [the victim] was shot. Lastly, the causal relation is also satisfied because it is foreseeable that violence will erupt during an aggravated robbery in which the robber carries a gun.

> "The very nature of an aggravated robbery is violent. Moreover, [the defendant] stuck a potato on the end of his gun, indicating his preparation to silently shoot the gun. . . . [The defendant] set off a chain of violent events when he planned on robbing a house and brought a gun in furtherance of that plan. The elements of time, distance, and causal relationship were met. Accordingly, the evidence, when viewed in a light most favorable to the prosecution, was sufficient to establish beyond a reasonable doubt that

11

the murder occurred during the res gestae of the aggravated robberies." *Phillips*, 295 Kan. at 941-42.

We reached a similar conclusion in *State v. Kaesontae*, 260 Kan. 386, 920 P.2d 959 (1996). In that case, the defendant was riding in a car with an acquaintance late at night when they came upon a man walking by himself. The defendant said he wanted "'to jack' the walking man, which meant that he wanted to rob him." 260 Kan. at 387. The driver of the car pulled up alongside the man, and the defendant, sitting in the front passenger seat, pointed a gun at the man and asked for his wallet. The man threw his hands up in the air and backed towards the rear of the car. He continued moving away from the front passenger-side window until his back was against the rear end of the car on the passenger side. Then, keeping his back against the side of the car, the man walked towards the front of the car and swung his right arm into the open passenger-side window. The man was leaning into the car, fighting with the defendant, when the defendant shot him twice. The man later died. The defendant was charged and convicted of felony murder based on the underlying felony of attempted aggravated robbery.

On appeal, the defendant argued that the evidence did not support his conviction for felony murder because his attempt to rob the man was complete by the time he was shot. This court rejected the defendant's argument, finding that that the chain of events set in motion by the defendant when he attempted to rob the victim continued even after the defendant *stopped* trying to rob him. We found that the killing and the underlying felony were part of the same principal occurrence, even though they did not occur at precisely the same time. We applied the time, distance, and causal relationship factors and concluded the victim's killing was part of the attempted aggravated robbery. *Kaesontae*, 260 Kan. at 390-91.

McClelland cites *State v. Becker*, 290 Kan. 842, 235 P.3d 424 (2010), in support of his argument that his attempted aggravated robbery of Laeli was complete by the time he shot Stone. *Becker* does not provide the support McClelland claims. In *Becker*, the defendant, along with two accomplices, forced Stephens, Dupree, and others to remain in a back bedroom while they tortured and questioned another individual in the living room about a missing safe containing drugs and money. While this was going on, Richardson—a person the defendant and his accomplices believed might know where the missing safe was located—arrived at the house. At gunpoint, Richardson was forced to sit on a couch while being questioned by the defendant and his accomplices about the missing safe. Richardson eventually grew bold, getting off the couch and forcing his way out of the house. The defendant and his accomplices followed Richardson outside where one of them shot Richardson, causing him to bleed to death. The defendant was subsequently charged and convicted of felony murder for killing Richardson during the commission of a kidnapping of Stephens and/or Dupree and/or Richardson.

On appeal, the defendant argued that the underlying kidnappings were completed by the time Richardson was shot outside the house. Specifically, he noted that the shooting occurred after Richardson was forced to sit down on the couch. Furthermore, the defendant argued that the kidnappings of Stephens and Dupree were in no way causally connected to Richardson's shooting.

The *Becker* court rejected the defendant's argument, stating that acceptance of it

"requires an impossible stretch of the imagination. The four people in the back bedroom
were being held there in part so that [the defendant] and the others could terrorize and
beat [one individual] and then Richardson. The kidnappings and the murder were closely
related. *Although Richardson got up to leave the house, the perpetrators attempted to
stop him, and it was as he was attempting to escape his captivity that he was shot. We*

13

*cannot conclude that the attempted kidnapping of Richardson was completed by that time.*" (Emphasis added.) 290 Kan. at 855-56.

McClelland argues that the italicized portion of the above quote supports his argument that his attempted aggravated robbery of Laeli was complete by the time Stone was shot. Unlike in *Becker*, where the defendant and his accomplices were trying to prolong Richardson's captivity when he was shot, McClelland contends that the facts here show that he was not attempting to rob Laeli when Stone was shot. In fact, Laeli had escaped and was returning from the neighbor's house with two other men by the time he heard the gunshot that killed Stone.

By making this argument, McClelland assumes that Stone's death must have strictly occurred within the confines of his attempted robbery of Laeli in order for the felony-murder rule to apply. But as the caselaw cited above establishes, in order for a killing to be considered a felony murder, all that is required is that the killing be some part of the underlying felony. See *Griffin*, 279 Kan. at 641. *Becker* exemplifies this rule. Technically, the kidnappings of Stephens and Dupree were "complete" by the time Richardson was shot—the defendant and his accomplices forced Stephens and Dupree into the bedroom with the intent to injure or terrorize them before Richardson even arrived at the house. But the *Becker* court still considered these kidnappings part of the later shooting because the kidnappings aided the defendant and his accomplices with questioning Richardson in the living room, which eventually resulted in Richardson being shot when he attempted to leave the house. Accordingly, "[t]he kidnappings and the murder were closely related," and, thus, the felony-murder rule could be properly applied to the facts of the case. 290 Kan. at 855.

As mentioned above, in order to establish a felony murder, the State must prove two causation elements: (1) the death occurred within the res gestae of the crime and (2) the felony and homicide must have a direct causal connection. See *Cameron*, 300 Kan. at

14

396-97. Furthermore, "[t]ime, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and therefore subject to the felony-murder rule." *Jacques*, 270 Kan. at 189-90. Turning to the facts of this case, the res gestae element is satisfied because Stone's murder occurred shortly after the happening of the principal occurrence—the attempted aggravated robbery of Laeli—and thus became so closely connected with the principal occurrence as to form a part of that occurrence. A direct causal connection is also present. The time element is met because the evidence presented at trial indicated that the events happened quickly—McClelland moved seamlessly from attempting to rob Laeli, to attempting to rob Stone and Penry, to finally shooting Stone during his struggle with Stone and Penry over control of the gun. The distance factor is satisfied because the attempted robbery of Laeli occurred in the same house where Stone was shot. Lastly, the causal relation is also satisfied because "it is foreseeable that violence will erupt during an aggravated robbery in which the robber carries a gun." *Phillips*, 295 Kan. at 942.

As the *Branch* court similarly put it, McClelland set off a chain of violent events when he planned on robbing a house and brought a gun in furtherance of that plan. The elements of time, distance, and causal relationship were met. Therefore, the evidence, when viewed in a light most favorable to the prosecution, was sufficient to establish beyond a reasonable doubt that the murder occurred during the res gestae of the attempted aggravated robbery of Laeli.

JURY INSTRUCTION ON FELONY MURDER

Next, McClelland argues that the district court's jury instruction on felony murder was broader than the charged crime because the instruction identified three alternate felonies (*i.e.*, the attempted aggravated robberies of Stone, Penry, and/or Laeli) that the

15

jury could rely on to satisfy the element that Stone's death occurred during the attempted commission of an inherently dangerous felony. As noted above, in the complaint, the State simply identified attempted aggravated robbery as the underlying felony supporting the felony-murder charge; the charge did not specify which attempted aggravated robbery was being relied on as the inherently dangerous felony. McClelland contends that the State, by charging felony murder in this manner, limited itself to the theory that McClelland committed felony murder solely by killing Stone during the attempted commission of an aggravated robbery upon Stone. Accordingly, because the jury instruction on felony murder indicated that any one of the three attempted aggravated robberies could satisfy the inherently-dangerous-felony element, the jury instruction was broader than the charged crime and, thus, erroneous.

*Standard of Review*

McClelland did not object to the district court's instruction on felony murder; therefore, the standard of review is governed by K.S.A. 22-3414(3) and *State v. Williams*, 295 Kan. 506, 511, 286 P.3d 195 (2012). In *Williams*, this court noted that K.S.A. 22-3414(3) imposes a procedural hurdle when a party fails to object to or request a jury instruction:

> "K.S.A. 22-3414(3) establishes a preservation rule for instruction claims on appeal. It provides that no party may assign as error a district court's giving or failure to give a particular jury instruction, including a lesser included crime instruction, unless: (a) that party objects before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for objection; or (b) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection in the district court." 295 Kan. 506, Syl. ¶ 3.

16

A two-step process is utilized to determine whether an instruction is clearly erroneous:

> "First, 'the reviewing court must . . . determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record.' 295 Kan. 506, Syl. ¶ 4. If error is found, then we proceed to the second step of assessing whether we are firmly 'convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal.' [Citations omitted.]" *State v. Cruz*, 297 Kan. 1048, 1066-67, 307 P.3d 199 (2013).

*Analysis*

"A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous." *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009). The reason for this is because "the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation." *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013). Accordingly, the State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges. *State v. Haberlein*, 296 Kan. 195, 210-11, 290 P.3d 640 (2012).

McClelland cites *Trautloff* in support of his argument that the jury instruction on felony murder was broader than the charged crime. In *Trautloff*, we found that a jury instruction on sexual exploitation of a child was broader than how the State had charged the crime. The State had charged the defendant with "displaying" an offending

17

photograph or video of a child, but the instruction allowed the jury to convict the defendant of "displaying, procuring or producing" such a photograph or video. At trial, there was ample evidence that the defendant procured and produced sexually explicit photographs and videos. Consequently, this court found that the instruction was erroneous because it allowed the jury to convict the defendant of sexual exploitation based on conduct that was not charged in the information. *Trautloff*, 289 Kan. at 801-02.

This court has reached similar conclusions in other cases. Generally, if an instruction adds alternate statutory elements of a crime that were not included in the complaint or information, the instruction is overly broad and, thus, erroneous. See, *e.g.*, *Hart*, 297 Kan. at 508-10 (finding overbroad jury instruction requiring crime of indecent liberties be committed with intent to arouse the sexual desires of the victim or defendant or both, but complaint only alleged intent to satisfy the sexual desires of the defendant); *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010) (finding overbroad jury instruction for aggravated kidnapping that included additional statutory elements beyond what was charged); *State v. Hemby*, 264 Kan. 542, 547-50, 957 P.2d 428 (1998) (finding overbroad jury instruction for sodomy that allowed conviction for oral or anal copulation when complaint only charged oral copulation); *State v. Turbeville*, 235 Kan. 993, 997-98, 686 P.2d 138 (1984) (finding overbroad jury instructions for kidnapping that included statutory alternate intents "to terrorize another" and "to facilitate flight" that were not included in complaint).

The facts of this case are distinguishable from those present in *Trautloff* and the cases cited above because the instruction at issue here did not contain an alternate statutory element that was not included within the language of the charged crime. Furthermore, the felony-murder instruction did not cite a new underlying felony that could be relied on to satisfy the inherently-dangerous-felony element. *Cf. State v. Wade*, 284 Kan. 527, 537, 161 P.3d 704 (2007) (finding overbroad jury instruction for

18

aggravated burglary predicated on underlying felony of either first-degree murder or aggravated assault when defendant was not put on notice that aggravated assault could serve as underlying felony). Both the instruction on felony murder and the charged crime identified attempted aggravated robbery as the inherently dangerous felony. The only difference is that the instruction, unlike the language of the charged crime, specified three alternate attempted aggravated robberies that could satisfy the inherently-dangerous-felony element.

Contrary to McClelland's assertion, the language of the complaint did not identify or imply that a specific attempted aggravated robbery was the underlying felony supporting the felony-murder charge, *i.e.*, the felony-murder charge did not identify or imply that Stone was the victim of the underlying felony. Thus, the State was not limited to pursuing that sole theory at trial. Consistent with the complaint, the instruction on felony murder identified attempted aggravated robbery as the inherently dangerous felony and then specifically identified three alternate attempted aggravated robberies that could satisfy the element that Stone's death occurred during an attempted inherently dangerous felony. If anything, the instruction on felony murder was more precise, not broader, than the charged crime.

Based on the above analysis, we conclude that the jury instruction on felony murder was legally appropriate. The instruction was not broader than the charged crime. Furthermore, based on evidence showing that Stone's death occurred during the course of McClelland's attempt to rob Stone, Penry, and Laeli, it was factually appropriate for the district court to instruct the jury that any one of the attempted aggravated robberies could satisfy the inherently-dangerous-felony element. Accordingly, the district court's instruction on felony murder was not erroneous.

19

## VIOLATION OF THE DOUBLE RULE

Finally, McClelland argues that the district court violated the "double-rule" of K.S.A. 2011 Supp. 21-6819(b)(4) when it ordered his sentences for three counts of attempted aggravated robbery and one count of aggravated burglary to run consecutively, resulting in a 153-month prison sentence. Admirably, the State concedes this issue.

Under K.S.A. 22-3504, an illegal sentence can be corrected at any time. In *State v. LaBelle*, 290 Kan. 529, Syl. ¶ 1, 231 P.3d 1065 (2010), this court stated the applicable standard of review:

> "The question of whether a sentence is illegal is a question of law over which this court has unlimited review. An illegal sentence is a sentence imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in character or the term of the punishment authorized, or a sentence which is ambiguous with regard to the time and manner in which it is to be served."

When a defendant is sentenced to multiple convictions in Kansas, K.S.A. 2011 Supp. 21-6819(b)(2) requires that the district court establish a base sentence for the primary crime. The primary crime is the on-grid crime which has the highest severity level among all the on-grid crimes of which the defendant was convicted. K.S.A. 2011 Supp. 21-6819(b)(2). The "double rule" is found in K.S.A. 2011 Supp. 21-6819(b)(4), which provides that "[t]he total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence."

Here, McClelland was sentenced to a hard 20 life sentence for felony murder, an off-grid crime. In addition, the district court sentenced McClelland to 57 months for the primary crime of attempted aggravated robbery in count 2 and imposed 32-month prison

sentences for counts three (attempted aggravated robbery), four (attempted aggravated robbery), and five (aggravated burglary). The district court ordered that all of these sentences run consecutively, resulting in a hard 20 life sentence plus a sentence of 153 months.

Because McClelland's base sentence for the primary crime of attempted aggravated robbery was 57 months, his total prison sentence for his on-grid crimes could not exceed 114 months. Accordingly, the controlling 153-month prison sentence McClelland received for his on-grid crimes violates the double rule of K.S.A. 2011 Supp. 21-6819(b)(4). Thus, we vacate McClelland's 153-month prison sentence and remand for resentencing on counts two through five.

We affirm all of McClelland's convictions and affirm his hard 20 life sentence for felony murder. McClelland's sentences for counts two through five are vacated, and his case is remanded for resentencing on those counts.