NOT DESIGNATED FOR PUBLICATION

No. 114,676

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK BENEWIAT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 6, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, for appellee.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

*Per Curiam*: Mark Benewiat appeals from his convictions of auto burglary and felony theft. On appeal, Benewiat argues that the trial court erred in instructing the jury in two ways. First, Benewiat argues that the trial court erred in giving an instruction on theft by receiving stolen property although he was charged with committing theft by obtaining or exerting unauthorized control over property. Second, Benewiat argues that the trial court erred in giving an instruction that he contends directed the jury against nullification. Based on these alleged errors, Benewiat requests that this court reverse his convictions and remand for a new trial. Nevertheless, as considered, Benewiat cannot establish reversible error. As a result, we affirm.

1

Benewiat was arrested and charged with one count of auto burglary, a severity level 9 nonperson felony, in violation of K.S.A. 2015 Supp. 21-5807(a)(3), and one count of felony theft, a severity level 9 nonperson felony, in violation of K.S.A. 2015 Supp. 21-5801(a)(1).

Benewiat had a jury trial. At trial, the State's theory was that Benewiat committed auto burglary and felony theft by aiding and abetting Eduardo Benitez. The primary witnesses who testified on behalf of the State were David Berner, the alleged victim, and Detective Jamie Schoenhoff.

Berner testified that he is a Snap-on tools dealer. Berner testified that on the evening of September 7, 2014, he was preparing his Snap-on tool truck for the upcoming work week in front of his house, when he noticed a dark colored SUV driving around the neighborhood. Berner testified that the SUV drove around the neighborhood, passing his house many times over the span of 4 to 5 hours. Berner asserted that around 8:45 p.m., when he was speaking to his wife on the front porch of their house, he saw his security lights come on. Berner explained that he ran to the back of his tool truck, and as he ran, he saw a man jump into the front passenger seat of a dark colored SUV holding an armful of his tools. Berner testified that someone else must have been driving the SUV as the SUV immediately sped off.

Berner testified that he could not see the faces of either the person who took his tools or the person who was driving the SUV. Berner also testified that he did not get the license plate number of the SUV. Nevertheless, Berner explained that before the SUV sped off, he punched the rear window of the SUV so hard that it shattered. Berner alleged that the men stole a little over $6,000 worth of tools.

Detective Schoenhoff explained that Benewiat became a suspect because he owned a black SUV with a broken rear window. Detective Schoenhoff contacted

2

Benewiat at Benewiat's house on September 9, 2014, at which point Benewiat told him that his wife might have let Benitez borrow his SUV on September 7, 2014. Then Detective Schoenhoff explained that on September 25, 2014, during a taped voluntary interview at the police station, Benewiat changed his story. According to Detective Schoenhoff, during that interview, Benewiat told him the following: (1) that Benitez had asked him for a ride on September 7, 2014; (2) that while he was driving his SUV, Benitez asked to be let out of the SUV; (3) that at this point, Benitez ran to a truck, took tools out of the truck, and then returned to the SUV; (4) that he did not know that Benitez had planned to steal the tools when he asked to be let out of the SUV; (5) that after he and Benitez drove away from the truck, Benitez asked him to return to the truck; (6) that he drove Benitez back to the truck even though he knew that Benitez planned on stealing more tools; and (7) that when Benitez took more tools from the truck on this second trip, the truck owner broke his SUV's rear window.

The taped interview was admitted into evidence and played before the jury. The taped interview, however, was not included in the record on appeal. After playing the interview, the State rested. Moreover, the defense rested without presenting any evidence.

Although the State submitted proposed jury instructions, it seems that the defense did not submit any proposed jury instructions. Included in the State's proposed jury instructions were the instructions that ultimately became Jury Instruction No. 6—"Burden of Proof, Presumption of Innocence, Reasonable Doubt," which quotes Pattern Instructions Kansas (PIK) Crim. 4th 51.010, and Jury Instruction No. 9—"Theft— Knowledge Property Stolen," which quotes the PIK Crim. 4th 58.020. During the jury instruction conference, the trial court adopted both instructions without objection.

During closing, the State reemphasized that Benewiat had aided and abetted Benitez in committing theft. The State also asserted that Benewiat "formed the mental culpability, the knowledge of what he was supposed to be doing" when he drove Benitez

3

back to the tool truck to take more tools. In Benewiat's closing, he countered that the jury should find him not guilty because he had no idea what was happening when Benitez got out of his SUV and took the tools from Berner's tool truck.

The jury found Benewiat guilty of both auto burglary and felony theft. For his primary offense of auto burglary, the trial court sentenced Benewiat to 12 months' probation, with an underlying 12-month prison term followed by 12 months' postrelease supervision. For his secondary offense of felony theft, the trial court imposed a concurrent 12-month probation sentence, with an underlying 6-month prison term followed by 12 months' postrelease supervision.

*Did the Trial Court Err in Instructing the Jury?*

On appeal, Benewiat asserts that two of the jury instructions were legally inappropriate. First, Benewiat argues that Jury Instruction No. 9, quoting PIK Crim. 4th 58.020—"Theft—Knowledge Property Stolen," was legally inappropriate because it instructed the jury on a theory of theft for which he had not been charged. Specifically, Benewiat argues that PIK Crim. 4th 58.020 applies only when a person has been charged with theft by receiving stolen property in violation of K.S.A. 2015 Supp. 21-5801(a)(4); thus, Instruction No. 9 was legally inappropriate because the State charged him only with theft by obtaining or exerting unauthorized control over property in violation of K.S.A. 2015 Supp. 21-5801(a)(1). Second, Benewiat argues that Instruction No. 6, quoting PIK Crim. 4th 51.010—"Burden of Proof, Presumption of Innocence, Reasonable Doubt," was legally inappropriate because it instructed the jury against jury nullification, essentially directing a verdict for the State. Benewiat contends that both alleged errors entitled him to reversal of his convictions and a new trial.

The State responds that neither instruction resulted in error. The State further argues that even if there was error, it was not reversible error.

4

*Standard of Review*

This court's standard for reviewing jury instruction challenges is as follows:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

*Instruction No. 9, PIK Crim. 4th 52.020—"Theft—Knowledge Property Stolen"*

Benewiat's first argument on appeal is that the trial court erred by giving Instruction No. 9, quoting PIK Crim. 4th 58.020—"Theft—Knowledge Property Stolen." To fully address this argument, this court must first review whether Benewiat has preserved his argument for appeal. Then, this court must review the relevant theft statute provisions and the applicable PIK instructions.

*Preservation*

K.S.A. 2015 Supp. 22-3414(3) states that "[n]o party may assign as error the giving or failure to give an instruction . . . unless that party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds for the objection unless the instruction or failure to give an instruction is clearly erroneous." Thus, "when an instruction issue is being raised for the first time on

5

appeal or has not been properly preserved with an appropriate objection in the trial court," appellate courts must still review the argument. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). Yet, reversal is appropriate only when the instruction was clearly erroneous. *Williams*, 295 Kan. at 510. A jury instruction will be deemed "clearly erroneous only if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred." *State v. Tully*, 293 Kan. 176, 196, 262 P.3d 314 (2011). As with the second step of the jury instruction standard of review, this court has unlimited review when determining if the giving or failure to give an instruction resulted in clear error. *Williams*, 295 Kan. at 515-16.

Benewiat did not object to any instructions before the trial court. Additionally, Benewiat does not contest this fact in his brief. Nevertheless, Benewiat asserts that the trial court violated his constitutional rights by giving Instruction No. 9. Therefore, according to Benewiat, this court should apply the constitutional harmless error test. To support his argument, Benewiat cites *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and states that "[t]o the extent that the jury instructions given permitted the jury to convict on a lower mental state than required by the crime actually charged, it would violate [his] constitutional right to a jury trial" because every element must be proven beyond a reasonable doubt under the Sixth and Fourteenth Amendments to the United States Constitution.

Benewiat, however, cites no authority in support of his argument that the constitutional harmless error test should apply *despite his lack of contemporaneous objection*. When an appellant fails to support an argument with pertinent authority or explain why that argument is sound in the face of contrary authority, that appellant fails to properly brief that argument, which is akin to abandonment. See *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015).

6

More importantly, in *Williams*, our Supreme Court held that the clear error test applies, even when defendants allege that the instruction at issue violated their constitutional rights, whenever defendants fail to object to an instruction below. 295 Kan. at 517. The *Williams* court explained: "[C]haracterizing the issue as a constitutional claim does not significantly advance [a defendant's] procedural posture. Even constitutional grounds for reversal are not properly before the appellate court for review if they are being asserted for the first time on appeal." Likewise, K.S.A. 2015 Supp. 22-3414(3) states without exception that the clearly erroneous standard applies if the defendant failed to object to the giving or failure to give an instruction below. See also *State v. Johnston*, No. 113,091, 2016 WL 3570514, at *2 (Kan. App. 2016) (unpublished opinion); *State v. Limburg*, No. 112,727, 2016 WL 3202546, at *7-8 (Kan. App. 2016) (unpublished opinion); *State v. Brown*, No. 107,494, 2016 WL 1079444, at *5 (Kan. App. 2016) (unpublished opinion); *State v. Outhet*, No. 112,010, 2016 WL 463401, at *8 (Kan. App. 2016) (unpublished opinion); and *State v. Redburn*, No. 112,411, 2016 WL 758308, at *5 (Kan. App. 2016) (unpublished opinion) (each holding that the constitutional harmless error test did not apply in similar jury instruction challenges based on our Supreme Court's decision in *Williams* as well as the plain language of K.S.A. 2015 Supp. 22-1414[3] when the defendant did not object to the instruction below).

As a result, to succeed on appeal, Benewiat must establish that Instruction No. 9 was clearly erroneous.

*Relevant Statutes and Instructions*

Benewiat was charged with theft under K.S.A. 2015 Supp. 21-5801(a)(1). K.S.A. 2015 Supp. 21-5801(a)(1) states that this type of theft occurs when a person "[o]btain[s] or exert[s] unauthorized control over property or services" with the "intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." Benewiat was not charged under any alternative theories of theft.

7

Accordingly, the trial court instructed the jury on the elements of K.S.A. 2015 Supp. 21-5801(a)(1) as follows:

"In Count Two, Mark Benewiat is charged with the crime of theft. He pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Daniel L. Berner was the owner of the property;

"2. Mark Benewiat obtained unauthorized control over the property;

"3. Mark Benewiat intended to deprive Daniel L. Berner permanently of the use or benefit of the property;

"4. The value of the property was at least $1,000 but less than $25,000; and

"5. This act occurred on or about September 7, 2014, Reno County, Kansas.

"The [S]tate must prove that Mark Benewiat committed the crime of theft intentionally.

"A defendant acts intentionally when it is the defendant's desire and conscious objective to do the act complained about by the [S]tate."

This instruction complies with PIK Crim. 4th 58.010—"Theft," and PIK Crim. 4th 52.010—"Culpable Mental State."

The trial court, however, also instructed the jury on PIK Crim. 4th 58.020—"Theft—Knowledge Property Stolen" in Instruction No. 9. Instruction No. 9 states: "Knowledge that property has been stolen by another must exist at the time control first occurs and may be proven by a showing that [the defendant] either knew or had a reasonable suspicion from all the circumstance known to [the defendant] that the property was stolen." The notes to PIK 4th 58.020 state that "[t]he instruction should be used with PIK Crim. 4th 58.010, Theft, in a prosecution for violation of *K.S.A. 21-5801(a)(4), receiving stolen property*." (Emphasis added.) K.S.A. 2015 Supp. 21-5801(a)(4) states that a person commits theft by "obtaining control over stolen property or services knowing the property or services to have been stolen by another" with the "intent to

8

permanently deprive the owner of the possession, use or benefit of the owner's property or services."

*Instruction No. 9 Was Legally Inappropriate*

Benewiat argues that Instruction No. 9 was legally inappropriate because he was not charged with theft by receiving stolen property under K.S.A. 2015 Supp. 21-5801(a)(4) but for theft by obtaining or exerting unauthorized control over property under K.S.A. 2015 Supp. 21-5801(a)(1). Citing *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015), Benewiat asserts that the State was bound by its decision to charge him under K.S.A. 2015 Supp. 21-5801(a)(1) as opposed to (a)(4). Benewiat asserts that the inclusion of Instruction No. 9 allowed the jury to consider whether he was guilty under two different theories of theft as opposed to just one theory of theft.

The State responds that the instruction was appropriate because Benewiat's entire defense was that he did not know that Benitez intended to steal the tools. Yet, the State's assertion that Instruction No. 9 was somehow appropriate because Benewiat's defense was about whether he had the requisite culpable mental state is incorrect because, as noted, PIK Crim. 4th 58.020 is applicable only when a person has been charged under K.S.A. 2015 Supp. 21-5801(a)(4). The instruction has no bearing on whether a person is guilty of theft under K.S.A. 2015 Supp. 21-5801(a)(1). As a result, the State's assertion that PIK Crim. 4th 58.020 was appropriate because "[t]he instruction cover[ed] the knowledge of the defendant to show how the jury [was] to apply the law . . . " is wholly incorrect.

Moreover, in *McClelland*, our Supreme Court held that "'[a] jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous.'" 301 Kan. at 828 (quoting *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 [2009]). The *McClelland* court further stated that "[g]enerally, if an instruction adds alternate

9

statutory elements of a crime that were not included in the complaint or information, the instruction is overly broad and, thus, erroneous." 301 Kan. at 829. Here, through Instruction No. 9, Benewiat's jury was instructed on an alternate statutory element of theft for a theory of theft he had not been charged under. Therefore, this instruction was overly broad and erroneous. As a result, the trial court erred by giving Instruction No. 9.

*Benewiat Cannot Establish Clear Error*

Nevertheless, because Benewiat did not object to the inclusion of Instruction No. 9 below, Benewiat is entitled to reversal only if he can establish clear error. Again, a jury instruction is deemed "clearly erroneous only if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred." *Tully*, 293 Kan. at 196. In other words, this court must be able to hold that but for the instruction error, the jury would have found Benewiat not guilty of felony theft. Thus, this is a very high burden to overcome.

Moreover, given the evidence presented at trial, Benewiat cannot overcome this high burden. The State's theory at trial was that Benewiat aided and abetted Benitez in committing theft under K.S.A. 2015 Supp. 21-5801(a)(1), and the jury was instructed on aiding and abetting. A person aides or abets another and is criminally responsible for another's crime when that person "act[s] with the mental culpability required for the commission thereof, advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime." K.S.A. 2015 Supp. 21-5210(a). To review, at trial, Detective Schoenhoff testified that during the interview with Benewiat, Benewiat told him the following: (1) that he did not know that Benitez intended to steal the tools when he offered him a ride; (2) that after the first trip Benitez made to Berner's tool truck, Benitez asked him to drive back to Berner's tool truck; (3) that he decided to drive back to Berner's tool truck even though he knew that

10

Benitez intended to steal more tools; and (4) that Benitez stole more tools from Berner's tool truck on the second trip.

Consequently, regardless of whether Benewiat realized that it was Benitez intention to commit theft when he offered him a ride, he expressly admitted in the interview that he knew Benitez planned to steal more tools on the second trip back to Berner's tool truck. Thus, Benewiat intentionally drove Benitez back to Berner's tool truck so Benitez could steal more tools. Clearly, this action aided and abetted Benitez in intentionally obtaining unauthorized control over Berner's tools. Moreover, Berner testified that a dark colored SUV, like Benewiat's SUV, continuously drove past his house, surveying his tool truck, in the hours before the theft. As a result, strong evidence supports that Benewiat aided and abetted Benitez in committing theft by obtaining or exerting unauthorized force over property as stated under K.S.A. 2015 Supp. 21-5801(a)(1).

Nevertheless, Benewiat contends that he is entitled to reversal of his convictions because his defense at trial was that he did not know that Benitez was planning to commit the theft. Benewiat contends that the State's reliance on the Instruction No. 9 language that the jury could find him guilty of theft simply by finding that he "knew or had reasonable suspicion" that Benitez was committing theft undermined his defense. According to Benewiat, it allowed the jury to convict him based on a finding that he *knew* that the property was stolen as opposed to a finding that he aided Benitez, who *specifically intended* to obtain or exert unauthorized control over the property.

In short, if Benewiat had objected below, his arguments on appeal might very well have had merit. Nevertheless, because Benewiat did not object, it is readily apparent that this court must affirm his theft conviction. Detective Schoenhoff 's testimony about Benewiat's interview supports Benewiat's conviction of theft by obtaining or exerting unauthorized control of property under K.S.A. 2015 Supp. 21-5801(a)(1) under a theory

11

of aiding and abetting Benitez. Benewiat's argument about the State using Instruction No. 9 to undermine his defense does not negate Detective Schoenhoff's testimony about the interview. In turn, because evidence supports Benewiat's theft conviction, this court is not firmly convinced that Benewiat would have been found not guilty of theft but for the jury's consideration of Instruction No. 9. Consequently, while Instruction No. 9 was legally inappropriate, Benewiat's argument that his theft conviction must be reversed misses the mark because he has failed to establish that the instruction was clearly erroneous.

*Instruction No. 6, PIK Crim. 4th 51.010—"Burden of Proof, Presumption of Innocence, Reasonable Doubt"*

Next, Benewiat argues that the trial court erred by giving Instruction No. 6, which quotes PIK Crim. 51.010—"Burden of Proof, Presumption of Innocence, Reasonable Doubt." Instruction No. 6 states in relevant part:

> "The test you must use in determining whether Mark Benewiat is guilty or not is guilty is this: If you have reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Mark Benewiat not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find Mark Benewiat guilty." (Emphasis added.)

Benewiat argues that the use of the word "should" in this reasonable doubt instruction "conveyed a duty and an obligation to convict" him of auto burglary and felony theft, instructing the jury against nullification. He argues that the reasonable doubt jury instruction essentially directs a verdict for the State. In support of his argument, Benewiat cites to our Supreme Court's decision in *State v. Smith-Parker*, 301 Kan. 132, Syl. ¶ 6, 164, 340 P.3d 485 (2014).

*Preservation*

As with his argument regarding Instruction No. 9, Benewiat did not object to Instruction No. 6 below. Benewiat, however, seems to argue that an analysis other than the clearly erroneous test applies because he believes that the instruction resulted in structural error that cannot be deemed harmless. Again, the fact that Benewiat alleges that the instruction violated his constitutional rights does not mean that this court engages in some different analysis; the clearly erroneous standard applies. See *Williams*, 295 Kan. at 510; K.S.A. 2015 Supp. 22-3414(3). As a result, Benewiat is entitled to relief only if he can establish that the jury would have reached different verdict but for the giving of Instruction No. 6.

*Instruction No. 6 Was Legally Appropriate*

As explained below, however, Benewiat fails to even establish that Instruction No. 6 was legally inappropriate, let alone clearly erroneous. Benewiat's argument regarding Instruction No. 6 fails for three reasons.

First, Benewiat's reliance on *Smith-Parker* is misplaced. The *Smith-Parker* court held that a reasonable doubt instruction that stated "[i]f you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty" was inappropriate because it essentially directed the verdict for the State. (Emphasis added.) 301 Kan. at 163-64. The *Smith-Parker* court held that the word "will" went too far because "[a] judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164. The *Smith-Parker* court further held that the word "must" went too far because this term was too close to directing a verdict. Thus, the *Smith-Parker* court held that "must" was closer in meaning to the term "will" than the term "should." Yet, the

*Smith-Parker* court did not comment on the use of the word "should" in place of the word "will" or "must" in a reasonable doubt instruction. 301 Kan. at 164.

In his brief, Benewiat emphasizes that in *State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49, 55 (1980), *overruled in part by Smith-Parker*, 301 Kan. 132, our Supreme Court held that the words "must" and "should" were interchangeable within a reasonable doubt jury instruction. Benewiat argues that because the *Lovelace* court held that the words were interchangeable, then when the *Smith-Parker* court held the word "must" was inappropriate it should have also held that the word "should" was inappropriate. Nevertheless, the *Smith-Parker* court only held that the use of the word "must" in a reasonable doubt jury instruction essentially directed a verdict. 301 Kan. at 163-64. If the *Smith-Parker* court wanted to comment on the legal appropriateness of using the word "should" it could have done so. This court is duty bound to follow Kansas Supreme Court precedent absent some indication that our Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). No indication that our Supreme Court is departing from its position exists. Accordingly, the *Smith-Parker* holding actually supports that the use of the word "should" in a reasonable doubt jury instruction is appropriate.

Moreover, as the State correctly points out in its brief, this court has rejected identical arguments in a few recent unpublished opinions. Specifically, this court rejected identical arguments regarding the use of the word "should" in a reasonable doubt jury instruction based on our Supreme Court's decision in *Smith-Parker* in the following cases: *State v. Limburg*, No. 112,727, 2016 WL 3202546, at *7-8 (Kan. App. 2016) (unpublished opinion); *State v. Ford*, No. 112,877, 2016 WL 2610259, at 8-9 (2016); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4-5; *State v. Singleton*, No. 112,997, 2016 WL 368083, at *4-6 (Kan. App. 2016) (unpublished opinion); *State v. Jones*, No. 111,386, 2015 WL 4716235, at *5-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. ___ (2016). Although these cases are merely persuasive authority,

14

Benewiat has provided no argument why his case requires a different analysis or result. Accordingly, these cases further show that Instruction No. 6 was legally appropriate.

Finally, the words "should," "must," and "will" have different meanings. In *Singleton*, this court persuasively explained the difference, stating:

> "But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. [Citation omitted.] Nutritionists urge that we all should eat our vegetables. But that does not constitute a directive to have recalcitrant diners force-fed their vegetables if they do not comply. A parent admonishing a child that he should eat his lima beans is clearly less of an imperative than the phrase every child has heard at one time or another, 'You will eat your lima beans!' Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in *Lovelace* and *Smith-Parker*. Should is advisory. It is not an imperative. The district court did not err in giving this instruction." 2016 WL 368083, at *6.

Thus, there is a fundamental difference between the words "should," "must," and "will." Must and will are mandatory while should is advisory. Therefore, in addition to the preceding analysis, the plain meaning of the words "should," "must," and "will" support that the use of the word "should" in a reasonable doubt jury instruction does not mandate a directed verdict.

In conclusion, Benewiat's argument that the trial court erred by giving Instruction No. 6 because it instructed the jury against jury nullification fails. His reliance on *Smith-Parker* is misplaced. Moreover, this court has rejected identical arguments. Finally, a fundamental difference between the words "should" and "must" and "will" exists. Consequently, no error resulted. Accordingly, we affirm.

Affirmed.

15