IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,824

STATE OF KANSAS,
*Appellee*,

v.

EMMANUEL ELIJAH CROSBY,
*Appellant.*

SYLLABUS BY THE COURT

1.

The crimes in this case, committed within a year of each other, are factually similar enough to satisfy the "same or similar character" statutory condition set forth in K.S.A. 22-3202(1) for the purpose of joinder.

2.

In order to convict a defendant of distribution of a controlled substance under K.S.A. 2019 Supp. 21-5705(a), the State must present sufficient evidence of possession as a necessary part of the crime.

3.

A jury instruction that omits specific facts alleged in the complaint does not expand the elements of the crime. As long as the elements described by the jury instruction accurately match the statutory language for the charged offense, there is no error.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed January 15, 2021. Affirmed in part and reversed in part.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett,* district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Emmanuel Crosby was charged with 10 crimes stemming from two separate incidents on October 15, 2015 and November 1, 2016. Crosby was charged with felony murder, distribution of a controlled substance, two counts of attempted aggravated robbery, two counts of criminal possession of a weapon, attempted murder in the second degree, criminal discharge of a firearm, aggravated battery, and aggravated burglary. The district court consolidated Crosby's cases, and a jury found Crosby guilty as charged.

Crosby directly appeals his convictions arguing the district court erred by consolidating his cases. He also claims there was insufficient evidence to support his distribution conviction and that the jury instructions on his attempted aggravated robbery, felony murder, and criminal possession of a firearm charges were erroneous. In the end, Crosby argues that cumulative error deprived him of his right to a fair trial and that his convictions must be reversed.

We reverse Crosby's distribution conviction because the State failed to provide sufficient evidence of Crosby distributing or intending to distribute the marijuana during the October 2015 incident. But because we find no other errors, we affirm the rest of Crosby's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2015, Crosby was with his friend Diego Larraga when Crosby told Larraga he wanted some weed. Larraga believed his ex-girlfriend Megan Wells could sell Crosby some weed, so he called her. Wells confirmed that her boyfriend, David Ingram, could sell them 2 ounces of weed for $500. So Crosby and Larraga arranged to meet Wells and Ingram behind a convenience store to carry out the transaction.

Wells arrived behind the convenience store driving with Ingram in the passenger seat. Upon arrival, Larraga and Crosby entered the backseat of the vehicle and Wells started to drive around the block. Crosby asked if he could see the weed, and Ingram placed a bag on the center console. Crosby said that the weight looked "shaky," but Ingram assured him it was all there. Larraga and Wells were having a conversation when they heard Crosby tell Ingram to "give it up." Wells then heard Ingram say "all right, all right" and turned to see Ingram with his hands up. As Wells tried to put the car in park, Crosby fired five to six shots into Ingram's head and upper body. Crosby and Larraga jumped from the vehicle and fled, leaving the drugs behind.

Ingram died as a result of the gunshot wounds. About an hour later, police apprehended Larraga and Crosby at Larraga's brother's home. The State brought charges associated with this incident on October 20, 2015, but they were later dismissed because the State could not locate a witness.

Then, on November 1, 2016, Crosby contacted Phillip Saunders about getting a 10 pack of ecstasy. Saunders told Crosby it would cost $60, and the two agreed to meet at a residence. When Saunders pulled up to the residence, Crosby was already outside of the residence with a man named Gene Johnson. Saunders remained in his car as the two approached his window. Johnson showed Saunders a computer that Johnson and Crosby

wanted to trade in exchange for the ecstasy pills. Saunders refused the deal and explained to them that the computer was not worth as much as the ecstasy pills.

Crosby and Johnson became irritated and started threatening Saunders. Crosby retrieved a gun from the porch and pointed it at Saunders stating "[w]ell, you're going to give up what you got." Saunders told Crosby "I'm not giving up nothing." Crosby then reached into Saunders' car with his free hand, and Saunders pushed Crosby off. Both Crosby and Johnson started firing as Saunders put the car into reverse and sped off. As Saunders was driving off, he looked down and realized he had been shot. Saunders drove to a general store where he was able to get someone to call an ambulance. Saunders sustained serious injuries from the shooting but survived.

The next day, the Wichita Police Department identified Crosby as a suspect in Saunders' shooting. Officers successfully located and apprehended Crosby. Upon arrest, the arresting officers found eight cartridges of ammunition matching a spent cartridge casing found in Saunders' vehicle. Police also found a laptop at the residence containing Crosby's fingerprints.

Ultimately, the State charged Crosby with 10 crimes between the two incidents. For the October 15, 2015 incident, the State charged Crosby with first-degree murder, distribution of a controlled substance, attempted aggravated robbery, and criminal possession of a firearm. For the November 1, 2016 incident, the State charged Crosby with attempted aggravated robbery, aggravated burglary, attempted murder in the second degree, criminal discharge of a firearm, aggravated battery, and criminal possession of a weapon by a convicted felon.

Crosby moved to sever the charges. But the court denied this request finding that the evidence established similar crimes in which Crosby lured individuals into a drug

deal to rob them. The court also noted that "joinder is the rule rather than the exception" and held that Crosby failed to show joinder was prejudicial. Thus, the charges from October 2015 and November 2016 were consolidated for trial. A jury found Crosby guilty as charged.

ANALYSIS

Crosby first challenges the district court's decision to join the cases. A district court is statutorily permitted to order two or more cases tried together if the crimes involved could have been joined in a single complaint, information, or indictment. K.S.A. 22-3203. Two or more crimes may be charged in separate counts of the same complaint, information, or indictment if the crimes: (1) are of the same or similar character; or (2) are based on the same act or transaction; or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. K.S.A. 22-3202(1). Here, Crosby contends the district court erroneously concluded the crimes here met the statutory condition of being of the same or similar character. We disagree.

We review potential joinder errors using a three-step process, applying a different standard of review at each step.

> "'When analyzing an issue of joinder, an appellate court determines which of the three conditions precedent the district court relied on (same or similar character; same act or transaction; or two or more acts or transactions connected together or constituting parts of a common scheme or plan); whether there is substantial competent evidence to support the district court's findings of fact, using a deferential standard; whether the district court properly concluded that a condition precedent had been met, using a de novo standard; and whether the district court abused its discretion in allowing joinder.'" *State v. Cruz*, 297 Kan. 1048, 1054, 307 P.3d 199 (2013) (quoting *State v. Gaither*, 283 Kan. 671, Syl. ¶ 4, 156 P.3d 602 [2007]).

5

Crosby does not challenge the district court's factual findings. Rather, Crosby argues that the legal conclusion should have been that the facts did not establish that the crimes were of the "same or similar character" or "connected together," an issue over which we exercise unlimited review. *Cruz*, 297 Kan. at 1054. Additionally, Crosby argues the district court abused its discretion in considering judicial economy when weighing whether joinder was appropriate. We review the district court's decision to join the cases under an abuse of discretion standard. *State v. Ritz*, 305 Kan. 956, 961, 389 P.3d 969 (2017).

First, we disagree with Crosby's argument that the district court erroneously found that a condition precedent under K.S.A. 22-3202(1) was met. Crosby argues the charges are not of the same or similar character because the offenses occurred a year apart, were in different locations, and the crimes were committed with different accomplices. According to Crosby, beyond generalities inherent in violent crimes, there were insufficient similarities to warrant consolidation.

We find Crosby's argument that the time between the October 2015 incident and the November 2016 incident precludes the court from finding the crimes were of similar character unpersuasive. Indeed, in the past we have found crimes occurring more than a year apart were "of the same or similar character." In *Cruz*, for example, this court found that two crimes occurring 17 months apart were of the same or similar character. 297 Kan. at 1057. The *Cruz* court even mentioned that the 17-month interval between the crimes "pale[d] in comparison" to other cases in which this court found joinder appropriate. 297 Kan. at 1056-57. See *State v. Bunyard*, 281 Kan. 392, 403, 133 P.3d 12 (2006) ("[T]he time span between all three incidents occurred within slightly over 1 year and, accordingly, the time span is not significant for severance considerations."); *State v. Cromwell*, 253 Kan. 495, 512, 856 P.2d 1299 (1993) (finding joinder appropriate where

four years passed in between the two murders). So we find Crosby's claim that the one-year time difference makes these crimes dissimilar unpersuasive.

Crosby correctly notes, however, that the crimes must be factually similar. See *Ritz*, 305 Kan. at 964 (holding that an overlap in the crimes charged is not enough to establish that crimes are of the same or similar character—there must be other factual similarities). See also *State v. Smith-Parker*, 301 Kan. 132, 157, 340 P.3d 485 (2014) ("On the first statutory condition, crimes of the same or similar character, we note that earlier Kansas cases that have held consolidation or joinder to be appropriate have generally had multiple commonalities, not merely the same classification of one of the crimes charged."). But while Crosby points out the differences between the two crimes—different location and different accomplices—he fails to mention the factual similarities.

Here, both of the victims were drug dealers. During both transactions Crosby threatened the victims with a firearm and attempted to take the drugs without payment. And, of course, both drug transactions ended with Crosby firing his weapon at the victims. The circumstances of Crosby's case remind us of past cases with crimes involving drug dealer victims, the same type of weapon used, and robbery as a motive—all leading us to conclude the crimes were of the same or similar character. See *State v. Gaither*, 283 Kan. 671, 687, 156 P.3d 602 (2007) (both victims drug dealers; defendant on quest for drugs during both; both victims shot with 9 mm handgun; both occurred in private dwellings; five-day time span); *State v. Barksdale*, 266 Kan. 498, 506-10, 973 P.2d 165 (1999) (both crimes murder; victims killed in similar manner; robbery common motive); *State v. Crawford*, 255 Kan. 47, 48, 53-54, 872 P.2d 293 (1994) (both crimes robbery; victims identified defendant; similar modus operandi). Accordingly, we find the district court correctly held that Crosby's two crimes were of the same or similar character.

7

Having determined that one or more of the statutory conditions were present, this court must determine whether the district court abused its discretion by consolidating Crosby's cases. *State v. Hurd*, 298 Kan. 555, 561, 316 P.3d 696 (2013). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Here, Crosby bears the burden of showing such abuse of discretion as the party asserting abuse. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Crosby argues the district court's consideration of judicial economy as a reason for consolidation was an error of law. Although the district court did briefly discuss joinder being the rule rather than the exception for the sake of judicial economy, the majority of the court's discussion centered on the factual similarities between the crimes. The court found that in Crosby's cases, both victims were lured to a designated location for drug transactions. The court also noted the use of a telephone to arrange these meetings and the use of a handgun in both incidents. The court then compared these facts to those in other cases contemplating joinder before concluding that joinder was proper in Crosby's case. Thus, we find that Crosby failed to meet his burden of establishing the district court abused its discretion in consolidating the two cases for trial, after finding that the crimes were of the same or similar character. As a result, we affirm the district court's order of consolidation.

*There is insufficient evidence to support Crosby's distribution charge.*

Next, Crosby argues that there was insufficient evidence to support his distribution conviction. Crosby was convicted of distributing 54 to 56 grams of marijuana in connection with the October 15, 2015 shooting. Crosby claims that the State failed to produce evidence sufficient to convict Crosby of distribution under K.S.A. 2015 Supp. 21-5705.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Before reaching the sufficiency issue, we must discuss an issue of statutory interpretation raised by the parties. Crosby and the State argue over whether a person who possesses a drug by receiving a distribution from another can be convicted of violating K.S.A. 2019 Supp. 21-5705(a). We need not resolve this particular statutory dispute, however, because under any conceivable theory, possession is an element of the crime of distribution. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Downing*, 311 Kan. 100, 103, 456 P.3d 535 (2020).

"And when interpreting a statute, the court begins its 'analysis with the touchstone of statutory interpretation: legislative intent. The best and safest rule for discerning this intent is the plain language of the statute. Only when the statutory language is unclear or ambiguous [does the court] move on to consider tools of statutory construction.'" *State v. Davis*, 312 Kan. 259, 267, 474 P.3d 722 (2020) (quoting *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 [2019]).

Under K.S.A. 2019 Supp. 21-5705:

"(a) It shall be unlawful for any person to distribute or possess with the intent to distribute any of the following controlled substances or controlled substance analogs thereof:

. . . .

> (4) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105,
> subsection (g) of K.S.A. 65-4107 or subsection (g) of K.S.A. 65-4109, and
> amendments thereto."

Because K.S.A. 2019 Supp. 21-5705(a) includes the alternatives "distribute" or "possess with the intent to distribute" it raises the question whether a person can ever be convicted of distribution of a controlled substance without first possessing the controlled substance as a matter of law. The most natural reading of the statute is that possession is an assumed prerequisite to distribution. See Black's Law Dictionary, *Distribute*, 597 (11th ed. 2019) ("To apportion; to divide among several. . . . To arrange by class or order. . . . To deliver. . . . To spread out; to disperse."); Black's Law Dictionary, *Distribution*, 597 (11th ed. 2019) ("The act or process of apportioning or giving out."). This reading gains added force when we look to the statutory definitions of distribution and possession.

Distribute is defined as "the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship." K.S.A. 2019 Supp. 21-5701(d). This "includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another." K.S.A. 2019 Supp. 21-5701(d). Possession is defined as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5701(q). We conclude it is impossible to "transfer" a controlled substance "from one person to another" without having "joint or exclusive control over" the controlled substance first. See K.S.A. 2019 Supp. 21-5701(d); K.S.A. 2019 Supp. 21-5701(q). As a definitional matter, a person cannot transfer something one does not control. Therefore,

10

in order to convict a defendant of distribution of a controlled substance under K.S.A. 2019 Supp. 21-5705(a), the State must present sufficient evidence of possession as a necessary part of the crime.

The evidence here was simply insufficient to establish that Crosby ever possessed the drugs. The State's evidence established that Crosby and Larraga entered the backseat of Wells' vehicle with Ingram in the front passenger seat. Once Crosby and Larraga were inside the vehicle, Crosby asked Ingram if he could see the marijuana. Ingram then placed the bag of marijuana on the center console. Shortly after, Crosby demanded Ingram to hand over the bag of marijuana, pointing a gun at Ingram. Crosby then shot Ingram, and Crosby and Larraga fled the scene leaving the bag of marijuana behind. After calling the police for help, Wells threw the bag of marijuana still sitting on the center console into the back of the vehicle. When officers inspected the crime scene, they found a baggie covered in blood containing 2 ounces of marijuana sitting on a pair of jeans in the back. Thus, the State failed to establish Crosby actually possessed the bag of marijuana. Because one must possess the substance in order to distribute it, we find the evidence insufficient to convict Crosby of distribution.

*The jury instructions on Crosby's attempted aggravated robbery, felony murder, and criminal possession of a firearm charges were not erroneous.*

Crosby also claims the jury instructions given on his robbery, felony murder, and criminal possession of a firearm charges were erroneous. First, Crosby argues the jury instructions were overbroad because they contained elements of the crimes charged not specifically alleged in the complaint. Second, Crosby argues the criminal possession of a firearm charge associated with the October 15, 2015 shooting was factually inappropriate. After reviewing both claims we find that the instructions were legally and factually appropriate.

11

We review both these jury instruction claims under our normal three step framework:

> "When analyzing jury instruction issues, we follow a three-step process:
>
> '(1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
>
> '(2) considering the merits of the claim to determine whether error occurred below; and
>
> '(3) assessing whether the error requires reversal, i.e., whether the error can be deemed harmless.'" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

*The district court did not err by giving jury instructions that were broader than the facts alleged in the complaint.*

Crosby admits he did not properly preserve his first jury instruction issue for appeal. Thus, we will only reverse if an error occurred and the court is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to show the necessary prejudice. 307 Kan. at 318.

But first, this court must complete the second step to determine whether an error occurred. At the second step, this court considers whether the instruction was legally and factually appropriate. 307 Kan. at 318. Appellate courts use unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). Here, Crosby argues the instructions were legally inappropriate because they failed to include specific facts alleged in the State's complaint.

12

Generally, a jury instruction on the elements of a crime that is broader than the charged crime is erroneous. *State v. McClelland*, 301 Kan. 815, Syl. ¶ 4, 347 P.3d 211 (2015). The charging document sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation. 301 Kan. 815, Syl. ¶ 4. Accordingly, the State is bound by the wording of its charging document. 301 Kan. 815, Syl. ¶ 4. And if a jury instruction on the elements of a crime adds alternate statutory elements that were not contained within the language of the complaint or information charging the defendant with the crime, the instruction is overly broad and, thus, erroneous. 301 Kan. 815, Syl. ¶ 5.

In the final amended information filed by the State, Count One set forth the offense of felony murder stating:

"Emmanuel Elijah Crosby did then and there unlawfully kill a human being, to wit: David J. Ingram."

At trial, the jury instruction on felony murder stated:

"The defendant or another killed David J. Ingram."

Counts Three and Five of the amended information charged Crosby with attempted aggravated robbery stating:

"Emmanuel Elijah Crosby did commit any overt act, to-wit: pointed a gun and demanded David J. Ingram to give him the marijuana."

"Emmanuel Elijah Crosby did commit any overt act, to-wit: pointed a gun at PLS and demanded cash."

13

At trial, the instructions on attempted aggravated robbery for both charges read:

> "The defendant performed an overt act toward the commission of aggravated robbery."

Counts 4 and 10 of the State's amended information charged Crosby with unlawful possession of a firearm:

> "Emmanuel Elijah Crosby did then and there unlawfully possess a weapon, to-wit: handgun."

At trial, the court provided the following instruction on Crosby's unlawful possession of a firearm charges:

> "The defendant possessed a weapon. . . . 'Possession' means having joint or exclusive control over an item with knowledge of or intent to have such control."

Crosby claims the district court committed clear error by failing to include the same specific facts set forth in the State's charging document. In doing so, Crosby cites to cases where we found that the instructions were overly broad and erroneous because they added alternate statutory elements of a crime that were not included in the complaint or information. See, e.g., *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013) (finding overbroad jury instruction requiring crime of indecent liberties be committed with intent to arouse the sexual desires of the victim or defendant or both, but complaint only alleged intent to satisfy the sexual desires of the defendant); *State v. Trautloff*, 289 Kan. 793, 803, 217 P.3d 15 (2009) (jury instructions allowing the jury to convict the defendant of "displaying or procuring or producing" explicit photographs or videos of a child despite only being charged with "displaying" such videos was clearly erroneous).

14

The instructions here, however, did not contain an alternate statutory element that was not included within the language of the charged crime. Instead, the instructions omitted specific facts alleged in the complaint. An omission of specific facts in the instruction is not an expansion of the elements of the crime. The elements required by the jury instructions accurately matched the statutory language for the charged offenses.

Further, the instruction on felony murder was not clearly erroneous because it included the language that the murder was committed by Crosby "or another." We have consistently held that the State is not required to charge aiding and abetting in the charging document to pursue a theory of accomplice liability at trial. See, e.g., *State v. Dupree*, 304 Kan. 377, 384-85, 373 P.3d 811 (2016) (Under K.S.A. 2015 Supp. 21-5210 the State is not required to use the words "aiding and abetting" in the charging document in order to pursue a theory of accomplice liability at trial.). Similarly, the State was not required to allege overt acts in the complaint charging defendant with attempted aggravated robbery. *State v. Humphrey*, 252 Kan. 6, 28, 845 P.2d 592 (1992).

Thus, we find that the instructions on felony murder, attempted aggravated robbery, and criminal possession of a firearm charges were legally appropriate. As a result, we find no error in the district court's instructions on felony murder, attempted aggravated robbery, and the possession of a firearm charge associated with the November 2016 charge.

*The instruction on Crosby's unlawful possession of a firearm charge associated with the October 15, 2015 shooting was factually appropriate.*

Crosby additionally argues that the instruction on his unlawful possession of a firearm charge was factually inappropriate because there was no evidence of joint possession of a firearm. In determining whether an instruction was factually appropriate, this court must determine whether there was sufficient evidence, viewed in the light most

15

favorable to the requesting party that would have supported the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016). Here, that party is the State.

Viewing the evidence in the light most favorable to the State, we find that the instruction was factually appropriate. The State introduced evidence that on October 15, 2015, Crosby and Larraga got into a car with Ingram to complete a drug transaction and subsequently attempted to rob Ingram. When Ingram failed to comply with Crosby's request to hand over the marijuana, Crosby shot Ingram multiple times. Crosby's defense strategy, however, attempted to inculpate Larraga or a third, unidentified individual as the shooter.

Given the competing theories of who had the gun, we find that the instruction was factually appropriate. Thus, we find no error.

*Cumulative error does not warrant reversal.*

Lastly, Crosby claims that cumulative error requires reversal. But because we only find one error, we find no cumulative error. As a result, we affirm Crosby's convictions of felony murder, attempted aggravated robbery, criminal possession of a firearm, attempted murder in the second degree, criminal discharge of a firearm, aggravated battery, attempted aggravated robbery, and aggravated burglary. We reverse Crosby's distribution of a controlled substance conviction.

BEIER, J., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 119,824 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.