NOT DESIGNATED FOR PUBLICATION

No. 125,313

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELIJIO DANIEL GONZALEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Submitted without oral argument. Opinion filed April 12, 2024. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Claire Kebodeaux*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

PICKERING, J.:  This is the direct appeal of Elijio Daniel Gonzalez' criminal convictions for voluntary manslaughter and unlawful use of a weapon by a convicted felon. Gonzalez contends the district court should have—despite no request by Gonzalez—instructed the jury on involuntary manslaughter imperfect self-defense and erred by denying his motion for a new trial. Our review of the record reveals no error, and we affirm.

1

EVENTS THAT LED TO MUNOZ' HOMICIDE AND GONZALEZ' TRIAL

This case begins in December 2019 with Kansas City, Kansas (KCK), police being dispatched to a residence to investigate a shooting. At the scene, law enforcement found Alberto Munoz dead from gunshot wounds. Officer Nicholay Pleshka took a statement from home resident Berlin Gonzalez that she did not see the shooting; she heard gunshots as she arrived home and got out of her car and saw a white SUV drive off.

KCK Detective James Gunzenhauser also interviewed Berlin later that evening at the police station. Berlin told Gunzenhauser that she arrived home and saw her estranged husband, Gonzalez, in the front yard of the home with Munoz. Berlin said that she got out of her car and argued with Gonzalez while trying to get Munoz to leave. Berlin stated that Munoz had his hands in his pockets like he had a gun. Berlin continued that Munoz ran off, and Gonzalez then began shooting at Munoz. According to Berlin, Munoz was not supposed to be at her house because he had cheated on her daughter, Isabel Cervantes.

The State tried Gonzalez in 2021 for intentional second-degree murder and unlawful possession of a weapon by a convicted felon. The first trial ended in a mistrial on Gonzalez' charges. At Gonzalez' retrial in 2022, a jury convicted him of voluntary manslaughter and unlawful criminal possession of weapon.

Berlin's story of the shooting changed between her interviews and her trial testimony. Berlin testified that Gonzalez and his girlfriend, Megan Walker, were at the home when she arrived from work. She said that Cervantes ran out of the house crying and hugged Gonzalez. Munoz exited the house, and Berlin told Munoz that she was mad at him. Gonzalez then angrily confronted Munoz, while Munoz stood silently with his hands in his pockets looking scared and shaking. Unlike her statement to Gunzenhauser, Berlin testified that Munoz did not look like he had a gun. She said that her and Gonzalez' son, E.G., was standing next to her during the confrontation. Berlin told

2

Munoz to leave, but he just stood there. Berlin testified that Gonzalez stuck a gun in Munoz' chest and shot Munoz. As Munoz tried to flee and run around Berlin's car, Gonzalez then shot Munoz in the back. Gonzalez got in his car with Walker and left. On cross-examination, Berlin testified that she did not recall her statement to Pleshka that she did not see the shooting.

Cervantes testified that Gonzalez arrived at the home with Walker, Walker's daughter, and Gonzalez and Walker's son. Cervantes ran to Gonzalez crying after an argument with Munoz, then she went back inside the house. Cervantes heard gunshots while inside and ran outside to see Munoz falling over in the street. Cervantes said that she was upset about Munoz cheating on her but did not recall if she had told Gonzalez.

Daniela Galindo, a nearby resident, testified that she heard noise that sounded like friends gathering before hearing gunshots. She looked out her window and saw a family running to get inside a white SUV. She then went outside to offer first aid as she saw a young girl hugging Munoz. Galindo took the girl off Munoz and checked for a pulse, but Munoz was already dead.

Officer Douglas Bailey found 9-millimeter Winchester bullet casings at the scene. Officer Brian Johnson found a universal shoulder holster at Gonzalez' home which could hold at least four calibers of guns. Johnson also found an opened box of 9-millimeter Winchester bullets at Gonzalez' home.

Dr. Altaf Hossain performed the autopsy on Munoz and issued a first report finding two gunshot wounds in the back and none in the chest. Dr. Hossain testified that after looking back at his report, he noticed that he erroneously concluded that an entry wound in Munoz' chest was an exit wound. He issued an amended report finding one gunshot wound in the back and one in the chest.

Over defense counsel's objections, the district court allowed E.G. to testify about witnessing the shooting after E.G.'s prior reluctance to give statements and testify. E.G., who had not testified in the first trial, became emotional and shut down while testifying before being excused.

When the case went to the jury, the district court instructed the jury on second-degree murder and voluntary manslaughter under a sudden quarrel theory. Gonzalez did not request an involuntary manslaughter imperfect self-defense jury instruction. The jury convicted Gonzalez of voluntary manslaughter and unlawful possession of a weapon by a convicted felon.

Gonzalez filed a motion for a new trial, arguing the district court should have sua sponte declared a mistrial due to E.G.'s behavior when he was called to testify as a witness to the shooting. Gonzalez asserted that E.G.'s fearful testimony had a prejudicial effect on the jury. At the sentencing hearing, the district court denied the motion. The district court then sentenced Gonzalez to a controlling prison term of 233 months.

GONZALEZ RAISES TWO ISSUES ON APPEAL

I.      THE DISTRICT COURT'S FAILURE TO INSTRUCT ON INVOLUNTARY MANSLAUGHTER IS NOT REVERSIBLE ERROR

Gonzalez argues that the district court erred in not instructing the jury on involuntary manslaughter. For the first time on appeal, he asserts that the district court should have instructed on involuntary manslaughter as a lesser included offense and the jury instruction was factually appropriate as an imperfect self-defense theory. He contends that because the jury heard testimonial evidence that Munoz and Gonzalez were in a face-to-face confrontation and Munoz had his hands in his pockets, insinuating that

4

he had a gun, the jury could have found that Gonzalez was defending himself but used excessive force.

The State responds that an involuntary manslaughter jury instruction was not legally appropriate because the lack of self-defense evidence at trial means Gonzalez cannot establish imperfect self-defense. It counters that an involuntary manslaughter jury instruction was not factually appropriate for similar reasons. Finally, the State argues that Gonzalez cannot establish clear error warranting reversal.

Imperfect self-defense is based on a "'lawful act [committed] in an unlawful manner'" and has been characterized as a "'lawful exercise of self-defense, but with excessive force.'" *State v. James*, 309 Kan. 1280, 1302, 443 P.3d 1063 (2019). If the district court had instructed the jury on involuntary manslaughter under Gonzalez' theory of imperfect self-defense, the district court would have presented the jury with the following instruction:

> "If you do not agree that the defendant is guilty of voluntary manslaughter, you should then consider the lesser included offense of involuntary manslaughter.

> "To establish this charge, each of the following claims must be proved:

> "1.     The defendant killed Alberto Munoz-Delvalle Jr.
> "2.     The killing was done during the commission of a lawful act in an unlawful manner.
> "3.     This act occurred on or about the 13th day of December, 2019, in Wyandotte County, Kansas."

See K.S.A. 2018 Supp. 21-5405(a)(4); PIK Crim. 4th 54.180 (2019 Supp.). While voluntary manslaughter requires the finding that a defendant knowingly killed another upon a sudden quarrel, the involuntary manslaughter-imperfect self-defense requires that

the "killing was done during the commission of a lawful act in an unlawful manner." PIK Crim. 4th 54.180.

With that in mind, we turn now to determining whether the district court's failure to give an involuntary manslaughter instruction was clearly erroneous.

*We review a jury instruction challenge under a well-known three-step process.*

When analyzing whether there was a jury instruction error, our analysis consists of three steps: (1) whether the issue was properly preserved below; (2) whether the instruction was legally and factually appropriate; and (3) if an error is found, assessing whether the error requires reversal. *State v. Couch*, 317 Kan. 566, 589, 533 P.3d 630 (2023). When a party asserts an instruction error for the first time on appeal, and the instruction was legally and factually appropriate, we consider whether the court's failure to give such instruction was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018); see K.S.A. 22-3414(3).

The "clearly erroneous" principle is not a standard of review, i.e., a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. *State v. Williams*, 295 Kan. 506, 510-11, 286 P.3d 195 (2012). For the failure to give a jury instruction to be clearly erroneous, the instruction must be legally or factually appropriate and we must be firmly convinced the jury would have reached a different verdict if the instruction had been given. The party claiming clear error has the burden to show the necessary prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

In this case, Gonzalez is asking us to consider this jury instruction issue for the first time on appeal. For the first step, although we will consider this instructional error question, our reversibility inquiry is one of clear error.

In the second step, we determine whether an involuntary manslaughter jury instruction was factually and legally appropriate. For this determination, we apply an unlimited standard of review of the entire record. *State v. Holley*, 313 Kan. 249, 254, 485 P.3d 614 (2021). A jury instruction is legally appropriate if it fairly and accurately states the applicable law. *Reardon v. King*, 310 Kan. 897, 902-03, 452 P.3d 849 (2019). Specifically, jury instructions on lesser included offenses are legally appropriate. *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019); see also K.S.A. 21-5109(b)(1) (lesser included offenses include lesser degrees of same offense).

Under Kansas law, it is well-established that involuntary manslaughter is a lesser included offense of second-degree murder. *State v. Pulliam*, 308 Kan. 1354, 1362, 430 P.3d 39 (2018) (recognizing the five degrees of homicide "are capital murder, first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter"). Because involuntary manslaughter is a lesser degree contained within the homicide offenses, and thus a lesser offense of second-degree murder, an involuntary manslaughter jury instruction was legally appropriate. *James*, 309 Kan. at 1302-03.

As for whether an involuntary manslaughter jury instruction was or was not factually appropriate, Gonzalez and the State offer competing reasons. Gonzalez contends that the jury could have found that he committed self-defense but used excessive force. The jury heard testimonial evidence that Munoz and Gonzalez were face to face and Munoz had his hands in his pockets, insinuating that he had a gun. The State responds that other than Munoz having his hands in his pockets, no other evidence supports the district court instructing on involuntary manslaughter. In support, the State notes that when Gonzalez and Munoz were face to face, Munoz did not say anything and was shaking. The State also points out that Gonzalez did not testify and there was no evidence that Gonzalez thought Munoz had a gun.

Our Supreme Court has held that when the parties offer several competing reasons why the requested jury instruction was or was not factually appropriate, we move straight to the third step. Thus, "we will assume—without deciding—that when the evidence is viewed in the light most favorable to [the defendant], it was sufficient for a rational factfinder to find for [the defendant]" on the requested lesser included offense. *State v. Salary*, 301 Kan. 586, 598-99, 343 P.3d 1165 (2015). Therefore, we follow our Supreme Court's analysis in *Salary* and assume *without deciding* that the jury instruction was factually appropriate and error occurred.

As for the third and final step, we determine whether the instructional error was clearly erroneous and thus warranting reversal. *Couch*, 317 Kan. at 589. The jury convicted Gonzalez on a sudden quarrel theory of voluntary manslaughter, a lesser offense of intentional second-degree murder. The only evidence at trial suggesting self-defense was Berlin's statement to Gunzenhauser that Munoz had his hands in his pockets like he had a gun. Berlin, however, denied she had made that statement at trial and testified that Munoz did not look like he had a gun.

The State also presented evidence that Gonzalez confronted Munoz after Berlin told Munoz that she was angry with Munoz. The jury heard evidence that indicated Gonzalez was the initial aggressor. Berlin testified that Munoz stood still with his hands in his pockets, did not say anything, and was shaking, looking scared. Berlin testified that she told Munoz to leave, but he stayed where he was. Additionally, Berlin testified that Gonzalez put a gun in Munoz' chest and shot Munoz. The State also presented evidence of Berlin's earlier statements to Gunzenhauser that when Munoz tried to run away, Gonzalez shot him. This was supported by Dr. Hossain's amended autopsy report, which concluded that Munoz suffered gunshot wounds both to his chest and his back. And as noted earlier by the State, Gonzalez did not testify and did not present evidence that he believed Munoz had a gun.

In *James*, the Kansas Supreme Court considered an involuntary manslaughter jury instruction request. There, the defendant, James, shot the victim and as the victim ran away, he shot the victim again. While the *James* court found that the district court erred in not instructing the jury on imperfect self-defense involuntary manslaughter, the court did find that an involuntary manslaughter verdict would have been "highly improbable." 309 Kan. at 1304. Noting the State's evidence of James shooting the victim as he ran from James, the *James* court found that "[s]hooting an unarmed person in retreat is *antithetical* to self-defense, perfect or imperfect." (Emphasis added.) 309 Kan. at 1304.

Likewise, while Berlin gave inconsistent and very little information to Pleshka about the shooting, the jury also heard her subsequent statements, which all indicated that Gonzalez shot Munoz in the back as he ran away. The evidence of the gunshot wounds to Munoz strongly supports Berlin's statements at trial. Although there was evidence that Munoz postured as having a gun, that fact was contradicted at trial. The jury heard little to no evidence that Gonzalez thought Munoz had a gun or otherwise acted in self-defense. Nor was there any testimonial evidence that Gonzalez had unlawfully shot Munoz in self-defense. Considering *James* and the evidence that Gonzalez shot Munoz as Munoz ran away, we cannot be firmly convinced that the jury would have convicted Gonzalez under his imperfect self-defense theory.

To conclude, we find that the jury would not have reached a different verdict if the instruction had been given. Therefore, the district court's failure to instruct on involuntary manslaughter is not clearly erroneous.

II.    WE DECLINE TO REVIEW THE DISTRICT COURT'S DENIAL OF THE MOTION FOR A NEW TRIAL

At trial Gonzalez objected to the State calling E.G. to testify. The defense argued to the court that the testimony was unfair surprise, which the district court overruled.

9

When E.G. did testify for the State, he appeared scared, "became overwhelmed with emotion," and broke down on the stand. E.G. was unable to complete his testimony. Following E.G.'s testimony, defense counsel did not move for a mistrial at that time. After the jury convicted Gonzalez of voluntary manslaughter, however, Gonzalez then moved for a new trial. He asserted that the district court should have sua sponte declared a mistrial after seeing E.G.'s breakdown on the stand and "at one point hyperventilating." Gonzalez argued that the district court "should have declared a mistrial, as E.G.'s emotional state was overwhelmingly prejudicial to Mr. Gonzalez."

At the sentencing hearing, Gonzalez again made the same argument: The district court should have sua sponte declared a mistrial after E.G. testified due to the prejudice caused from E.G.'s breakdown on the stand. Defense counsel argued that the jury seeing E.G., who "basically froze up and was unable to testify" and appeared afraid to testify, created a prejudicial effect. He noted, "But I think that the effect that it had on the jury was prejudicial to my client to have this witness called to the witness stand who was ultimately unable to testify and appeared to be afraid for whatever reason." He then argued that the prejudicial effect on the jury warranted a new trial.

Now on appeal, although Gonzalez states he is challenging the district court's denial of his motion for a new trial, he modifies his argument and claims that the district court erred in allowing E.G. to testify. He does not argue that the court erred in denying the mistrial. Rather, he asserts that the district court should have realized that E.G. did not want to give statements at trial and the court should have anticipated this breakdown during testimony, and thus, E.G. never should have testified.

A party may not object at trial to admission of evidence on one ground and then on appeal argue a different ground. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020). In *George*, defense counsel objected to the State's cross-examination at trial because it was beyond the scope of direct examination. On appeal, the defendant argued

that the State improperly sought character evidence with its questioning. Our Supreme Court denied review of the claim because, while defense counsel objected at trial, counsel objected for a different reason than the reason asserted on appeal. 311 Kan. at 701.

Similarly, in this case, Gonzalez asserts a different argument on appeal than what he argued in his motion for new trial. Unlike his earlier arguments for declaring a mistrial, Gonzalez now contends the district court should have known E.G. was a reluctant witness and should have anticipated E.G.'s emotion on the stand. And Gonzalez did not explain how the district court erred in denying the motion for a new trial. Because this issue has not been preserved for appeal, we decline review. See *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (appellate court decision to review unpreserved claim is prudential).

To conclude, we find the district court's failure to provide the jury with the involuntary manslaughter instruction was not clearly erroneous, and we decline review of Gonzalez' unpreserved claim. Therefore, we affirm Gonzalez' convictions and sentences.

Affirmed.