NOT DESIGNATED FOR PUBLICATION

No. 127,411

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY LEE TURNER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE YOUNG, judge. Submitted without oral argument. Opinion filed February 20, 2026. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

CLINE, J.: Ricky Lee Turner seeks to overturn his conviction for aggravated robbery on the basis that the jury was improperly instructed and the prosecutor erred in closing arguments. He claims the elements of his offense were broader in the jury instructions than in the complaint and the prosecutor misstated the facts and inappropriately vouched for the victim.

After reviewing the record, we find Turner has misread both the complaint and jury instructions and has misinterpreted the prosecutor's remarks. And even if we

1

accepted his claims of error as true, we find the alleged errors to be harmless. We therefore affirm his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

As Turner aptly states in his appellate brief, this case presents a classic story of an unpaid debt and a punch—or, more accurately, punches—in the face. Turner lent David Boeschling $300, but Boeschling only repaid part of the debt. When Turner asked for the rest, Boeschling refused to make any more payments, claiming Turner had agreed to forgive the remainder owed.

A few months later, Boeschling was playing a video game called Dragon's Ascent at the Pilot Fuel Center in Salina. Dragon's Ascent is an arcade game that challenges players to shoot dragons for prizes that they can redeem for cash. Interestingly, this is not the first case to reach the appellate courts in Kansas involving the game. See *POM of Kansas v. Kobach*, 319 Kan. 764, 765, 561 P.3d 506 (2024).

Boeschling was positioned with his back to the entrance of the Pilot Fuel Center's game room and had his phone and money sitting on the table. Turner entered and immediately began a physical altercation with Boeschling, punching him two or three times. The first punch grazed Boeschling's chin, and the second split his lip. Turner then grabbed Boeschling's phone and $20 off the table and started to leave the game room. As Turner was walking out, he threw the phone back towards Boeschling. Then, a few seconds later, Turner returned and delivered a final punch that sent Boeschling to the ground.

Turner was arrested and charged with aggravated robbery, theft, criminal damage to property, and battery. Before trial, the State dismissed all but the aggravated robbery charge.

At trial, the State presented the body camera footage of Boeschling's interview in the hospital from Salina Police and the security footage from the Pilot Fuel Center game room. In addition, the State called Boeschling, the Pilot Fuel Center manager, and the interviewing officer to testify. Turner did not testify, nor did he present any witnesses in his defense.

The jury convicted Turner as charged. The district court sentenced Turner to 36 months' probation with an underlying prison sentence of 79 months, and 36 months of postrelease supervision.

REVIEW OF TURNER'S APPELLATE CHALLENGES

*Did the district court err by failing to include factual assertions from the complaint in its jury instruction?*

Turner first argues that the jury instruction on aggravated robbery violated his constitutional rights to due process and fair notice by instructing the jury on elements broader than the complaint. He alleges the complaint identified that he took $20 *and* a cell phone from Boeschling and, therefore, the State had to prove the taking of each item. Because the jury instruction told the jury it could convict if it found Turner "knowingly took property from the person or presence of David Boeschling," Turner claims the jury could have convicted him if it found he took the $20 or the cell phone. Turner says he was prejudiced in his defense because he relied on the language of the complaint, believing the State had to prove he took both the $20 and the cell phone to convict.

*Standard of Review*

When analyzing jury instructions, appellate courts follow a three-step process:

"(1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. 320 Kan. at 242. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. See *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024). "Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When, like here, a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). "For a jury instruction to be clearly erroneous . . . the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *Mendez*, 319 Kan. at 727.

*Turner fails to demonstrate that the instruction given was either factually or legally inappropriate.*

Turner asserts that the instruction unconstitutionally expanded the factual basis upon which he could be convicted, thereby violating his due process rights. In his reply brief, he clarifies that he is claiming the instruction was legally inappropriate.

4

Turner relies on *State v. Stohs*, 63 Kan. App. 2d 500, 507-08, 531 P.3d 533 (2023), to support the assertion that including an additional factual basis for conviction establishes factual inappropriateness sufficient to demonstrate clear error. In *Stohs*, the complaint charged Stohs with identity theft by using the victim's identity to defraud Officer Child. Yet the instruction given to the jury stated that it could convict Stohs if it found that he had used the victim's identity to defraud Officer Child and/or Officer Stricklin. This court found that the expansion of the factual basis was erroneous because it increased the number of ways the jury could find Stohs guilty, and he lacked adequate notice to defend against the charge. 63 Kan. App. 2d at 507-08.

But Turner's circumstances do not mirror those in *Stohs*. Instead, his case is more like the situation in *State v. Crosby*, 312 Kan. 630, 640, 479 P.3d 167 (2021). There, the complaint charged Crosby with attempted aggravated robbery stating:

> "'Emmanuel Elijah Crosby did commit any overt act, to-wit: pointed a gun and demanded David J. Ingram to give him the marijuana.'
> "'Emmanuel Elijah Crosby did commit any overt act, to-wit: pointed a gun at PLS and demanded cash.'" 312 Kan. at 640.

Whereas the instructions given for the attempted aggravated robbery charges read: "'The defendant performed an overt act toward the commission of aggravated robbery.'" 312 Kan. at 640.

The Kansas Supreme Court held:

> "The instructions here . . . did not contain an alternate statutory element that was not included within the language of the charged crime. Instead, the instructions omitted specific facts alleged in the complaint. An omission of specific facts in the instruction is not an expansion of the elements of the crime. The elements required by the jury

instructions accurately matched the statutory language for the charged offenses." 312 Kan. at 641.

What differentiates these two cases is that in *Stohs* the instruction expanded the potential for conviction without adequately informing the defendant of that factual basis at the outset. Thus, Stohs was not able to thoroughly investigate and test defense strategies against Officer Stricklin. 63 Kan. App. 2d at 507-08. Whereas *Crosby* provided the complete factual basis for the attempted aggravated robbery charges against Ingram and P.L.S. at the outset, and Crosby had every opportunity to defend himself against those charges. Thus, there was no violation because they did not create any alternative avenues for conviction, instead they simply provided the bare legally sufficient instructions required for attempted aggravated robbery. *Crosby*, 312 Kan. at 640-41.

Here, Turner was informed in the complaint that the factual basis for the aggravated robbery charge included the taking of "to-wit: $20 US currency; cellphone, from the person or presence of David Boeschling." While he emphasizes repeatedly that the complaint charged him with taking $20 *and* a cell phone from Boeschling, he misreads the complaint. It did not include the word "and" between the listed items. Instead, it included a semicolon when listing the items. So not only was Turner informed of the items which the State charged him with taking, but the complaint does not support his argument that the State communicated an intent to prove he took both items to establish the charge. And the State was not required to prove both items were taken to support one charge of aggravated robbery.

Moreover, Turner's allegation that his defense strategy was impacted by the wording of the complaint—causing him to focus solely on the taking of the cash—is not supported by the record. In closing, Turner addressed the allegation of the taking of the cell phone when he argued:

"[Y]ou can use your common sense and know that if there's a cell phone resting on a table and two individuals are having a brawl in front of the table where you can't see everything—there's movements, there's back and forth between the two of them—the table is very well going to wind up bumped into; the cell phone is going to be affected by gravity and just fall off."

We are unpersuaded by Turner's assertion that the State had to prove the taking of both items, when the taking of one would have been sufficient to convict Turner of aggravated robbery. This would incentivize the State to either be minimally specific in charging documents or bring individual charges on each factual assertion. Alternatively, Turner's view would require that the State only identify the cell phone or the cash in the charging document, but if evidence of the other listed item was mentioned at trial, this would create the situation we found unconstitutional in *Stohs*.

For these reasons, we find Turner has failed to overcome the initial hurdle of demonstrating that the instruction was legally or factually inappropriate.

*Even if the instruction was inappropriate, it was harmless.*

As mentioned, Turner argued against the allegation that he took the cell phone in closing. So any prejudice he claimed by not being aware until trial that the State would offer evidence that he took this item is unsupported by the record. Nor does he articulate any trial strategy that would have changed had he been aware that the State would offer this evidence. And Turner offered no evidence in his defense, so he cannot claim he or another witness would have changed their testimony if he had been aware of this allegation.

Turner has not convinced us the verdict would have been different if the jury had been instructed that Turner had to take both items for it to convict. See *Mendez*, 319 Kan. at 727-28. Boeschling testified that Turner not only told him he was going to take both

items but that he actually did. Boeschling also told Officer Taylor that Turner took both items. Turner points to no evidence or argument that accused him of taking some other item from Boeschling, and he fails to persuade us that, based on this evidence, the jury could have found Turner only took one of the items. We therefore find any alleged error was harmless.

*Did the prosecutor's statements during closing argument amount to reversible prosecutorial error?*

Turner next argues that the prosecutor erred by misstating a fact or factual inference and by vouching for the credibility of a witness. The State, however, highlights that the statements at issue need to be analyzed in context rather than selectively picked from the closing argument.

*Standard of Review*

Appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during voir dire, opening statement, or closing argument, even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

The appellate court uses a two-step process to evaluate claims of prosecutorial error: error and prejudice. *Mendez*, 319 Kan. at 737. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. 319 Kan. at 737.

A prosecutor errs when arguing a fact or factual inference without an evidentiary foundation. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). Even so, a

prosecutor may argue evidence shows a defendant is guilty so long as the prosecutor does not state personal opinions on the ultimate guilt of the defendant. *State v. Douglas*, 313 Kan. 704, 714, 490 P.3d 34 (2021). In addition, upon review, the court does not consider any statement in isolation but looks instead to the context to determine whether an error occurred. *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020). If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

In other words, prosecutorial error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). The statutory harmlessness test also applies to prosecutorial error, but when analyzing both constitutional and nonconstitutional error, appellate courts only need to address the higher standard of constitutional error. *State v. Carr*, 314 Kan. 744, 764, 502 P.3d 511 (2022). Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the higher standard of harmlessness. *Sherman*, 305 Kan. at 114.

*The prosecutor's statements were not in error.*

Turner asserts that the prosecutor's statements, including: "'[I]t's been *uncontroverted* today that [Turner] took money, some amount of money, about $20,'" and "'the *uncontested* evidence you heard today was that [Turner] didn't just get into a fight,'" misrepresented the facts. Turner also asserts that these statements improperly vouched for Boeschling's retelling of the events because they assume that his version is true.

9

The State highlights that the statements were made in the context of discussing the evidence presented. The full statement of the prosecutor on this issue was as follows:

> "Element number 1 is that the defendant knowingly took property from the person or presence of David Boeschling. You saw him come into the Pilot. You saw the altercation there on the video. And I would submit to you, ladies and gentlemen, it's been uncontroverted today that he took money, some amount of money, about $20. I think he told the officer five times in that video that, He took 20 bucks; it was under my cell phone. And he took his cell phone. Doesn't mean he has to keep it."

Turner argues that the prosecutor's statements "constitute a misstatement of the facts because the question of whether [Turner] took property from [Boeschling] was extremely controverted." Yet the reality is that there was no contrary evidence presented at trial. Kansas courts have continued to reference uncontroverted evidence as that which is not faced with conflicting testimony or evidence. Kansas Supreme Court Rule 141(b)(1)(A)-(C) (2025 Kan. S. Ct. R. at 216-17). That does not mean that Turner's cross-examination testing the credibility of the State's witness was meaningless—it was just not contrary evidence.

The Wisconsin Supreme Court has heard this issue and determined that the use of "uncontroverted" when referencing a lack of contrary evidence is proper because it focused the jury on what they could consider as opposed to speculations planted by defense counsel in opening statements or closing arguments. *State v. Hoyle*, 406 Wis. 2d 373, 398, 987 N.W.2d 732 (2023). For example, the theory that the phone fell off the table or that Boeschling's money would have been in the machine based on the nature of the video game is speculation by Turner, and the use of "uncontroverted" by the prosecutor focuses the jury on the security footage as the sole piece of evidence that could answer this question.

Similarly, "uncontested" has the same effect of focusing the jury on the evidence that they can consider. The full statement of the prosecutor this time was:

> "[Defense counsel] argues that the only thing the defendant is guilty of is getting into a fight. But, yet, the uncontested evidence you heard today was that he didn't just get in a fight. He went there with one purpose. He didn't play any video games. You don't see him playing any video games on that. He went there with one purpose, and that was to exact money or exchange for money some blood from Mr. Boeschling."

As for witness vouching, the prosecutor did not opine on Boeschling's credibility at any point. Turner argues that the use of "uncontroverted" and "uncontested" is witness vouching because it is telling the jury that they must accept Boeschling's version of events. As demonstrated, these terms merely identified what constituted evidence, it does not mean that the jury had to accept the evidence as true—and Turner's cross-examinations were his opportunity to discredit the witnesses and evidence the State presented. Thus, the prosecutor's statements—clarifying that the witnesses and video footage were the only forms of evidence presented—were not in error.

*Even if the statements were made in error, they were not prejudicial to Turner.*

While Turner argues that these two statements prejudiced his defense because his "sole theory of defense was that he *contested* taking anything from [Boeschling]," this misinterprets the meaning of uncontroverted or uncontested evidence. There was no obligation for the jury to believe the State's evidence based on the prosecutor's statements—in fact they could, and did, independently review the camera footage during deliberations. Thus, it purely highlighted the evidence that could be considered.

Furthermore, the district court instructed the jury on the use of attorneys' statements during deliberations. Jury instruction No. 1 provided: "Statements, arguments and remarks of counsel are intended to help you in understanding the evidence and in

11

applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Additionally, jury instruction No. 3 clarified that "[a] defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inference of guilt from the fact that the defendant did not testify, and you must not consider this fact in arriving at your verdict." A jury is presumed to follow the instructions given to it. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008). Thus, the statement by the prosecutor that the evidence is uncontroverted or uncontested is harmless since the jurors had the footage for review in deliberations and were aware that the prosecutor's statements made in closing did not constitute evidence.

*Did cumulative error deny Turner the right to a fair trial?*

Turner lastly argues that the cumulative effect of the jury instructions and the prosecutor's statements went to the heart of his defense strategy: that he did not take anything from Boeschling.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024). That said, since we found no errors, there is nothing to accumulate. The jury instruction was both factually and legally appropriate, and the prosecutor's statements were an accurate recounting of the evidence presented in trial.

Affirmed.